1  Daniel Weintraub - Bar #132111
2  James R. Selth - Bar #123420
3  Elaine V. Nguyen - Bar #256432
   WEINTRAUB & SELTH, APC
4  11766 Wilshire Boulevard, Suite 1170
   Los Angeles, CA 90025
5  Telephone: (310) 207-1494
6  Facsimile: (310) 442-0660
   Email: Elaine@wsrlaw.net

[Proposed] Attorneys for Plaintiff, Debtor and
Debtor-in-Possession, LONDON FINANCE
GROUP, LTD.

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re LONDON FINANCE GROUP, LTD., <br><br> Debtor and Debtor in Possession, | Case No.  2:15-bk-10097-BR <br><br> Adversary No. 2:15-ap-01070-BR <br><br> Chapter 11 |
| LONDON FINANCE GROUP, LTD. <br><br> Plaintiff, <br><br> vs. <br><br> INTERNAL REVENUE SERVICE, The UNITED STATES OF AMERICA And SHERMAN MAZUR, <br><br> Defendants. | **AMENDED COMPLAINT FOR TURNOVER UNDER 11 U.S.C. § 542, DECLARATORY RELIEF AND WRONGFUL LEVY** |

**INTRODUCTION**

Plaintiff, Debtor and Debtor-in-possession, London Finance Group, Ltd. ("LFG"), by and through its undersigned counsel, hereby petitions this Court to issue (1) a judgment directing defendant Internal Revenue Service ("IRS") or the

**COMPLAINT FOR DECLARATORY RELIEF**

United States of America ("USA")[1] to turnover the certificate for 718,494 Restricted Shares of Revolution Lighting Technologies, Inc. (the "Stock") registered in the name of LFG pursuant to 11 U.S.C. § 542 and (2) a declaratory judgment holding that the Government has no lien on the Stock because the statute of limitations in 26 U.S.C. § 6502 bars collection of any tax liability underlying the alleged lien on the Stock. LFG alleges as follows:

**A.    PARTIES, JURISDICTION AND VENUE**

1. LFG is a California corporation having its principal place of business in the County of Los Angeles, State of California.

2. At all times relevant, Defendant USA acted by and through its agent, the IRS.

3. Defendant Sherman Mazur ("Mazur") is an individual residing in in this District.

4. Jurisdiction is proper under 11 U.S.C. § 505, 26 U.S.C. § 7426(a) and 28 U.S.C. §§ 1334 and 1346(a) because this is a civil action arising under the Constitution and laws of the United States, and it is brought by a person other than the person against whom the tax was assessed.

5. This is "core" proceeding under 28 U.S.C. § 157(b)(2)(B), (E) and (K).

6. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**B.    SEIZURE OF THE STOCK BY THE GOVERNMENT**

7. On or about February 13, 2013, the Federal Bureau of Investigation (the "FBI") seized the Stock at the offices of LFG located at 1100 Glendon Avenue, Los Angeles, California in connection with a criminal investigation into Mazur, Ari Kaplan ("Kaplan"), and several other individuals pursuant to an unlawfully obtained February 13, 2013 search warrant in Case No. 13-322M (the "Search

---

[1] The IRS and the USA are sometimes collectively or individually referred to as the "Government".

- 2 -

Warrant"), in connection with the now dismissed charges in the criminal action styled: <u>United States v. Mazur, et al.</u>, Case No. 13-0322K2:13-CR-00062-SVW (C.D. Cal.) (the "Criminal Case").

8.   At all times relevant, Kaplan was the president of LFG and maintained his innocence and disputed the allegations in the Criminal Case.

9.   On April 4, 2013, LFG's counsel sent a letter to Assistant United States Attorney James Bowman of the United States Attorney's office for this District (the "Bowman Letter") demanding return of the Stock. A true and correct copy of the Bowman Letter is attached as Exhibit "B". In that letter, LFG articulated the facts under which it received the Stock. Specifically, LFG's rights in and to the Stock arose out of that certain Consulting Agreement attached as Exhibit "1" to the Bowman Letter and that certain Termination and Release Agreement attached as Exhibit "2" to the Bowman Letter. Kaplan signed these agreements as president of LFG.

10.  On March 25, 2014, the USA moved for the dismissal of the Criminal case against Mazur, Kaplan and the other defendants on the basis that the USA had unlawfully obtained certain evidence against the criminal defendants, including Kaplan and Mazur. On that same date, the Honorable Judge Wilson issued his order attached as Exhibit "A" dismissing the charges in the Criminal Case against Kaplan and Mazur, among others.

11.  On April 14, 2014, the Office of the United States Attorney for this District advised Kaplan's counsel that, even though the Stock was issued to LFG, was for services rendered by LFG, had been unlawfully seized in connection with the now dismissed criminal charges in the Criminal Case, and was not evidence of any alleged crime or otherwise the subject of any ongoing investigation, the Government decided to detain the Stock pursuant to a Notice of Federal Tax Lien

on the assets of Mazur for unpaid taxes on the grounds that LFG was the "nominee" of Mazur.

12. On July 29, 2014, Kaplan's counsel sent a letter to Frank Stevens of the IRS demanding return of the Stock (the "Stevens Letter"). A true and correct copy of the Stevens Letter is attached as Exhibit "D" without exhibits.

13. The IRS refused to return the Stock and scheduled an execution sale of the Stock for January 6, 2015. A copy of the notice of that sale is attached as Exhibit "E".

14. Unable to stop the sale, LFG filed the instant bankruptcy case on January 5, 2015, in part to preserve the Debtor's equity in its asset wrongfully detained by the Government.

15. On January 5, 2015, bankruptcy counsel for LFG made demand upon the IRS to turnover the Stock pursuant to 11 U.S.C. 542(a).

16. As of this date, the IRS has failed to turnover the Stock or even respond to counsel's demand for turnover of the Stock.

17. The IRS claims a lien upon the Stock on the grounds that LFG is the nominee of Mazur and that Mazur owes over $80.0 million in taxes to the IRS. As discussed below, the statute of limitations bars the Government's claim against Mazur and, even if the Government's claim against Mazur were not time-barred, LFG is not the nominee of Mazur. Accordingly, the IRS should turnover the Stock to LFG free and clear of any purported claims of the United States or the IRS against Mazur.

**C.    MAZUR'S TAX RETURNS**

18. This action addresses Mazur's continuing liability under six (6) tax returns, including extensions filed by him and his then wife (Michelle) for years ending December 31, 1982 through December 31, 1987. For ease of reference, the

tax year ending on December 31, 1982 is referred to as "TY82."  Other tax years use the same abbreviation.

19. Mazur and Michelle filed a joint tax return for TY82 on April 8, 1985, which return with extensions was due on or before October 15, 1983.

20. Mazur and Michelle filed a joint tax return for TY83 on August 19, 1985, which return with extensions was due on or before October 15, 1984.

21. Mazur and Michelle filed a joint tax return for TY84 on February 3, 1986, which return with extensions was due on or before October 15, 1985.

22. Mazur and Michelle filed a joint tax return for TY85 on November 2, 1987, which with extensions return was due on or before October 15, 1986.

23. Mazur and Michelle filed a joint tax return for TY86 on or before November 23, 1987, which return with extensions was due on October 15, 1987.

24. Mazur and Michelle filed a joint tax return for TY87 on or before January 9, 1989, which return with extensions was due on October 15, 1988.

### D.  MAZUR'S INVOLUNTARY BANKRUPTCY

25. Creditors filed an involuntary bankruptcy petition against Mazur on March 1, 1993 pursuant to 11 U.S.C. § 303 in this Court, Case No. 1:93-bk-16885-GM.  The docket in the Mazur bankruptcy is referred to as the ("Mazur Docket").  A true and correct copy of the Mazur Docket is attached as Exhibit "F".

26. On May 3, 1994, the Bankruptcy Court entered an order for relief.

27. On October 13, 1995, Michelle filed a voluntary petition under chapter 7 in the Bankruptcy Court as Case No. 1:95-17942-GM.

28. The filing of a voluntary or involuntary bankruptcy petition against Mazur stayed assessment of his liability for taxes.  11 U.S.C. § 362(a)(1) and (6). In 1994, Congress amended 11 U.S.C. § 362 so that debtors, such as Mazur, could no longer enjoy an automatic stay against tax assessments.  That amendment had no retroactive effect.  Hence, until lifted by operation of law or order of the

Bankruptcy Court, the automatic stay barred the United States from assessing Mazur's taxes.

29. The automatic stay also barred any attempt by the IRS to collect any taxes from the assets of Mazur's bankruptcy estate or from Mazur individually under 11 U.S.C. § 362(a)(1) and (6), respectively.

30. The filing of Mazur's bankruptcy petition created an estate in all of the assets of Mazur in existence as of the date of the filing. 11 U.S.C. § 541(a).

31. Pursuant to 11 U.S.C. § 541(a)(5), except for certain testamentary gifts received within 180 days after the petition date, all assets acquired by Mazur after the entry of the order for relief were not part of his bankruptcy estate and belong to Mazur.

32. On June 24, 1998, the United States and Duke Salisbury, the chapter 7 trustee of Mazur's bankruptcy estate (the "Trustee"), entered into a stipulation entitled "Stipulation Between the United States of America and Chapter 7 Trustee to Pursue Pending Actions in Tax Court" (the "Stipulation"). A true and correct copy of the Stipulation is attached as Exhibit "G". [Mazur Docket No. 122]

33. Paragraph 3 of the Stipulation provides:

> The parties stipulate that any attachment of funds and/or property of the LFG [Mazur] by the Internal Revenue Service pursuant to relief from the automatic stay shall not preclude nor restrict the Trustee from claiming said funds as an asset of the respective bankruptcy estates [of Mazur or Michelle] and, in the event an issues arises, the parties stipulate that the United States Bankruptcy Court shall be the forum in which the ownership of the and/or property shall be determined.

34. On August 31, 1998, the Bankruptcy Judge Geraldine Mund entered an order approving the stipulation (the "Lift Stay Order"). A true and correct copy of the Lift Stay Order is attached as Exhibit "H". [Mazur Docket No. 129]

35. The USA drafted and filed the Lift Stay Order on a form approved by the Bankruptcy Court. The Lift Stay Order specifically provides: "As to Movant (*i.e.*, the United States), its successors, transferees and assigns ("Movant"), the stay of 11 U.S.C. § 362(a) is … ***Terminated as to [Mazur] and [Mazur]'s estate***." (Emphasis added). Thus, from and after August 31, 1998, the automatic stay imposed by 11 U.S.C. § 362(a) did not limit or otherwise prohibit the United States from assessing or collecting any tax owed by Mazur to the United States.

36. On April 12, 2006, the Bankruptcy Court entered an order granting a discharge to Mazur (the "Discharge Order") thereby terminating the automatic stay as to all creditors having claims against Mazur. 11 U.S.C. § 362(c). [Mazur Docket No. 129]. The Discharge Order did not change or affect the Lift Stay Order's termination of the automatic stay for the benefit of the USA and the IRS, which was effective as of August 31, 1998.

### D. PROCEEDINGS IN TAX COURT

37. On March 17, 1988, Mazur and Michelle filed a petition in the Tax Court in connection with the deficiency notices filed against them in connection with TY82 and TY83 returns. The Tax Court carried these cases on its docket as Case No. 5303-88

38. On Mach 17, 1989, Mazur and Michelle filed a second petition in the Tax Court in connection with the deficiency notice filed against them in connection with the FY84 return. The Tax Court carried this case on its docket as Case No. 5266-89.

39. On December 14, 1990, Mazur and Michelle filed a third petition in the Tax Court in connection with the deficiency notices filed against Mazur and his wife in connection with the TY85 and TY86 returns. The Tax Court carried this case on its docket as Case No. 27912-90.

40. On December 14, 1990, Mazur and Michelle filed a fourth petition in the Tax Court in connection with the deficiency notices for filed against them in connection with the TY87 return. The Tax Court carried on its docket as Case No. 1450-92.

41. After obtaining relief from stay under the August 31, 1998 Lift Stay Order, the United States recommenced the litigation against Mazur and Michelle of the proceedings in the Tax Court to assess Mazur and Michelle's taxes for TY82 through TY87, inclusive.

42. After extensive discovery and negotiations, the IRS, Mazur and Michelle entered into stipulated judgments assessing their tax liability to the United States for the TY82 through TY87 (the "Tax Court Judgments") as follows:

|      | DATE       | ADDITIONS   | IRC § 6651(a)(1) | IRC § 6653(a) | IRC § 6661 |
|------|------------|-------------|------------------|---------------|------------|
| TY82 | 03/19/2001 | $301,027    | $74,543          | 0             | $75,527    |
| TY83 | 03/19/2001 | $796,587    | $198,547         | 0             | $199,147   |
| TY84 | 12/27/2001 | $773,742    | $115,324         | 0             | $122,824   |
| TY85 | 12/27/2001 | $1,591,577  | $795,789         | 0             | $397,894   |
| TY86 | 12/27/2001 | $2,923,879  | $1,279,757       | 0             | $426,586   |
| TY87 | 12/27/2001 | $1,725,558  | $435,208         | $90,118       | 0          |

43. Pursuant to the Notice of Federal Tax Lien (Exhibit "C") filed on July 24, 2013 with Los Angeles County Recorder's office, the IRS assessed the taxes for TY82 through TY87 on the following dates:

| TY82 | June 10, 2002   |
| TY83 | July 8, 2002    |
| TY84 | August 10, 2002 |
| TY85 | July 8, 2002    |
| TY86 | July 8, 2002    |
| TY87 | May 24, 2002    |

### E. THE STATUTE OF LIMITATIONS HAS RUN ON THE ASSESSMENTS AGREED TO IN THE TAX COURT ENTERED IN 2001.

44. Under 26 U.S.C § 6502(a)(1) generally provides the period of limitations for collection of assessed Federal income taxes begins on the date taxes are assessed and ends ten (10) years thereafter.

45. Therefore the state of limitations on the enforcement of the Tax Court Judgments expired under 26 U.S.C. § 6502(a) as follows:

| | |
|---|---|
| TY82 | June 10, 2012 |
| TY83 | July 8, 2012 |
| TY84 | August 10, 2012 |
| TY85 | July 8, 2012 |
| TY86 | July 8, 2012 |
| TY87 | May 24, 2012 |

46. 26 U.S.C § 6503(h)(2) tolls the limitation for any period of time during which a pending bankruptcy proceeding prevents the IRS from collecting taxes plus six (6) months. That section provides as follows:

> The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and --
> 
> (1) for assessment, for 60 days thereafter, and
> 
> (2) for collection, 6 months thereafter.

47. By virtue of the Lift Stay Order, which applied to both Mazur and his bankruptcy estate, the IRS was not prohibited by Mazur's bankruptcy from assessing or collecting taxes owed by Mazur from and after August 31, 1998.

48. Under 26 U.S.C. §§ 6502(a) and 6503(h)(2), the statute of limitations on the *collection* of taxes from Mazur began to run on the *later* of (a) February 28,

- 9 -

1999 (six months after the entry of the Lift Stay Order) or (b) the date that the Tax Court assessed those taxes.

49. The dates and deadlines governing the assessment, collection and the commencement and expiration of the statute of limitations of the Mazur tax obligations are as follows:

| Tax Year | Entry of Lift Stay Order | Collection Commencement Date [26 U.S.C. §§ 6502-6503] | Taxes Assessed By IRS | Commencement of SOL [ie., Later of Collection Commencement Date or Tax Assessment | Expiration of SOL [26 U.S.C. § 6502] |
|---|---|---|---|---|---|
| 1982 | 8/31/98 | 2/28/99 | 6/10/02 | 6/10/02 | 6/10/12 |
| 1983 | 8/31/98 | 2/28/99 | 7/8/02 | 7/8/02 | 7/8/12 |
| 1984 | 8/31/98 | 2/28/99 | 8/10/02 | 8/10/02 | 8/10/12 |
| 1985 | 8/31/98 | 2/28/99 | 7/8/02 | 7/8/02 | 7/8/12 |
| 1986 | 8/31/98 | 2/28/99 | 7/8/02 | 7/8/02 | 7/8/12 |
| 1987 | 8/31/98 | 2/28/99 | 5/24/02 | 5/24/02 | 5/24/12 |

50. In certain correspondence, the IRS has advised Mazur that it takes the position that the IRS was stayed from collection efforts against Mazur until the entry of his discharge in bankruptcy pursuant to 11 USC § 727(a) on April 12, 2006. *See* letter to Sam Landis dated May 17, 2013 attached as Exhibit "I". As a result, the United States contends the statute of limitations was tolled until October 12, 2006 under 26 U.S.C. § 6503(h)(2) and that the statute of limitations on collecting those assessments will expire on October 12, 2017.

51. The Lift Stay Order entered on August 31, 1998, however, removed any prohibition upon the Government for (a) assessing any tax against Mazur and

- 10 -

Michelle or (b) collecting any tax from any assets of Mazur or Michelle or their respective bankruptcy estates.  Moreover, the plain language of the Lift Stay Order drafted by the Government specifically provides that the automatic stay is "terminated" with respect to Mazur and the bankruptcy estate.

### F.    RECENT COLLECTION EFFORTS BY THE IRS AFTER EXPIRATION OF STATUTE OF LIMITATIONS

52.    In complete disregard of the effect of the Lift Stay Order and expiration of the statute of limitations in 26 U.S.C. § 6502(a)(1), the IRS has continued its collection efforts against Mazur.

53.    In particular, the IRS filed a Notice of Federal Tax Lien on June 23, 2013 against LFG, as nominee of Mazur, without providing notice to LFG.  *See* notice attached as Exhibit "C".   Since becoming aware of the purported lien, LFG has consistently disputed the IRS' assertion of a lien on the property of LFG and demanded return of the Stock.

### FIRST CLAIM FOR RELIEF
### [TURNOVER PURSUANT TO 11 U.S.C. § 542(a)]

54.    LFG realleges paragraphs 1 through 54, above.

55.    The Stock is property of LFG's bankruptcy estate.

56.    Under 11 U.S.C. § 542(a), the Government has a duty to turnover the Stock notwithstanding any claims of lien or interest that they might in assert in the Stock, even if the amount of the alleged lien exceeds the value of the property detained by the IRS.  U.S. v. Whiting Pools, Inc., 462 U.S. 198, 209 (1983).

### SECOND CLAIM FOR RELIEF
### [DECLARATORY RELIEF AND TO QUIET TITLE OF THE STOCK IN THE NAME OF LFG PURSUANT TO 28 U.S.C. § 2201]

57.    LFG realleges paragraphs 1 through 54, above.

58.    LFG has made demand upon the USA and the IRS to turnover the

- 11 -

Stock; however, they refuse to do so.

59. LFG alleges that the statute of limitations has run on the collection of the taxes assessed in the Tax Court Judgments on the dates set forth in paragraph 48, above.

60. The United States claims the statute of limitations for the collection of the Tax Court Judgments will run on or about October 12, 2017.

61. An actual, present and justiciable controversy has arisen between LFG and the United States concerning when the statute of limitations will expire on the collection of the taxes assessed in the Tax Court Judgments.

62. LFG seeks declaratory judgment from this Court that the statute of limitations on the collection of taxes assessed in Tax Court Judgments expired on the dates set forth in paragraph 47, above.

### THIRD CLAIM FOR RELIEF

### [RELIEF FROM WRONGFUL LEVY PURSUANT TO 26 U.S.C. § 7426(A)(1) AND 11 U.S.C. § 505]

63. LFG realleges paragraphs 1 through 63, above.

64. Because LFG does not owe the Government any money for taxes, the Government must give LFG notice of levy pursuant to the requirements of 26 U.S.C. § 6335(a), as follows:

> As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property, (or, in the case of personal property, the possessor thereof), or shall be left at his usual place of abode or business if he has such within the internal revenue district where the seizure is made. If the owner cannot readily be located, or has no dwelling or place of business within such district, the notice may be mailed to his last known address. Such notice shall specify the sum demanded and shall contain, in the case of personal property, an account of the property seized, and, in the

1        case of real property, a description with reasonable
2        certainty of the property seized.

3    65.   As of this date, the IRS has not personally served notice upon LFG in compliance with C.F.R. § 301.7425-4(b)(4)(ii). Rather, all of the notices to LFG have been made by either facsimile or letter to the following address: 9100 Wilshire Boulevard, Suite 200W, Beverly Hills, California 90210. Neither LFG nor its principal have ever maintained an office or residence at that address.

  66.   By virtue of the running of the statute of limitations on the collections of the taxes assessed in the Tax Court Judgments, the United States may not take steps to use any means to collect said taxes, including any levy on the Stock.

  67.   Despite the running of the statute of limitations on the collection of the taxes assessed in the Tax Court Judgments, the United States continues to seek collection of those taxes through various coercive processes as evidenced by the attempted execution sale of the Stock.

  68.   Therefore, the levy on the Stock by the Government is wrongful within the meaning of 26 U.S.C. § 7426(a)(1).

  69.   Pursuant to 26 U.S.C. § 7430(a)(2), LFG is entitled to its reasonable litigation costs incurred in connection with the determination, collection or refund of any tax interest or penalty under Title 26.

**WHEREFORE**, LFG prays for the following relief:

A.   For an order requiring the IRS to turnover the Stock pursuant to 11 U.S.C. § 542(a) to LFG;

B.   A declaration that the statute of limitations contained in 26 U.S.C. § 6502(a) on the collection of taxes assessed in the Tax Court Judgments has expired;

C.   For a declaration that LFG is the sole owner of the shares;

- 13 -

D. An injunction against the United States from taking any steps from seeking to collect upon or otherwise enforce taxes assessed in the Tax Court Judgments against LFG;

E. For LFG's reasonable attorneys' fees under 26 U.S.C. § 7430(a)(2); and

F. For such other and further relief as is just and proper.

Respectfully submitted:

WEINTRAUB & SELTH, APC

February 5, 2015

By: /s/ Elaine V. Nguyen
Daniel J. Weintraub
James R. Selth
Elaine V. Nguyen
[Proposed] Attorneys for Plaintiff,
Debtor and Debtor-In-Possession,
LONDON FINANCE GROUP, LTD.

- 14 -